## (November 22, 1944.)

MARY KORUTZ et al., Respondents, v. CENTRAL MARKET, INC., Appellant.

Judgment and order affirmed, with costs.

BREWSTER, J (dissenting). I dissent. Plaintiff, Mary Korutz, sued to recover for her personal injuries, and her husband, Anthony, for his medical expenses and loss of services and consortium occasioned thereby. They secured jury verdicts in the amounts of $13,500 and $1,000, respectively.

The complaints, sounding in nuisance and negligence, allege that the plaintiff wife caught her heel in a hole in the wooden threshold beneath an inner set of double swinging doors which formed the direct entrance to and exit from the main part and floor of defendant's store on Paine Street, Green Island, N. Y.; that this caused her to fall and sustain injury; that said threshold was worn, defective and allowed by defendant to remain in use while it was in an unsafe condition and productive of harm.

The law of the case established that defendant's liability depended upon the due establishment by evidence of the fact of the fall and consequent injury in the manner first above referred to. The court charged " * * * *if she did not fall because her foot caught in a hole in the sill she cannot recover."* (Italics supplied.) For the plaintiffs the evidence as to this is found only in plaintiffs' own testimony and that of a neighbor who did not witness the accident. For the defendant, eight witnesses testified to the contrary, four of whom were disinterested. Plaintiff Mary gave no direct evidence as to the existence of the hole, beyond saying " * * * and I started to walk, and I made a step and I got caught with my right heels, and it make me fall down ", and then answering " Yes ", to the next question by her attorney: " Q. Did your right heel get caught as you started through the doors? " Her husband, the other plaintiff, was more specific. His direct was that he witnessed the accident and he said

" * * * she caught in that sill. I mean the threshold, and she went right down, falling on her back"; that shortly thereafter he looked at the threshold and a V-shaped hole then appeared as follows: " Q. Tell the Court and jury what you found when you went back and looked? A. Well, I found there the threshold had worn out; something like rotten. It was worn out from the inside and there was a hole like a V. Q. Like a V? A. Yes. Q. You are of Russian nationality? A. Yes. Q. And you have a little difficulty in speaking? A. Yes, it is pretty difficult for me. Q. Did you say it was about the shape of a V? A. Yes. Q. You mean this hole in the wood sill or threshold, is that right? A. Yes. Q. What part of the wood sill was worn out that you told us about? A. It was more to the right. Q. To the right as one goes into the store or out? A. When you go out from the store; that is, inside." This interested witness, after putting his wife in his automobile, went back and made the observations just quoted and he went back, so he said, to report the accident to defendant's manager, and when he so reported he did not point out or say anything to him or any one else about the " hole " he claimed to have just previously discovered — the very hole he testified he had actually seen his wife's heel catch in — and proof of the existence of which was vital to plaintiffs' causes of action, under the law of the case.

Plaintiffs' disinterested witness' testimony as to the presence of the " hole ", in the direct, is as follows: " Q. All right. What was located at the base of the two swinging doors? A. There was a threshold there you might call it, a sill, and it was badly worn and there was hardly anything left of it. * * * Q. In addition to its being worn what else did you observe about its condition? A. There was a sort of a hole in a certain part of it towards the center, like coming from the store it was worn to a little hollow sort of. Q. On what side of the sill was that hollow? A. It was more to the center and to the right, more that way going out. Q. As one proceeded out, you mean?" And she later, on cross-examination, characterized the " hole " as a " hollow part * + * almost like a hole." This witness in identifying the hole or hollow spot in question, finally located it a little to the right of the center of the threshold and, when pinned to an estimate, she said it was five or six inches to the right of the center. Taking this in its light most favorable to the plaintiffs, it does not square with the probability of its having been the cause of plaintiff's fall, since, if the husband's description is correct, her right heel would have been a considerable distance away from and to the right of this hole or worn spot as she attempted passage through the right-hand door, as indicated by dimensions of the doors and doorway; and it nowhere appears she went through sideways. Of the eight witnesses who testified to the nonexistence of the hole or any depression which could have possibly caused plaintiff's heel to catch in it and precipitate her fall, four were employees, including the manager, and, other than he, their duties brought them into frequent and close contact with the threshold and conditions about and appertaining to it. The four other witnesses were disinterested, although customers of the store. True, on cross-examination, all or most of these gave proof to the effect that the threshold was more or less " worn " but I fail to see how this helps plaintiffs' case since the law of the case is that plaintiffs had to prove the existence of the hole which their evidence endeavored to point out, and that, that very hole caused the accident. The fact that the threshold was somewhat, and to an indefinite extent, worn, has little legitimate probative force, if any, in establishing the precise situation, the hole, delineated by the law of the case. A reading of the record manifests to me that the jury

did not weigh the evidence impartially as regards the crucial question pointed out to them, but, rather, that they were influenced by the rather shocking description of the threshold in question, given by the plaintiff husband, that it was rotten, etc. If their verdict was predicated upon such, it was contrary to law. The case was not submitted as one in nuisance. Defendant's failure to produce photographs of the sill or, indeed, the sill itself, doubtless also militated against it with the jury. But this omission may not serve to strengthen plaintiffs' evidence, if outweighed by such opposing evidence as was offered.

I recognize the rule that the jury's finding upon a conflict in evidence is not to be disturbed merely because the court may believe they arrived at an incorrect result. But in sensing that rule I am mindful that we may not do our duty when we fail to correct a gross error in the recorded weight of evidence even though there was a bare particle of evidence on plaintiffs' side of the scale.

The extent of plaintiff's injury in that shadowy, sacroiliac region of the body — where proof of the nature and extent of harm is often elusive — was sharply contested and the medical testimony in sharp conflict. Finding for plaintiffs on this issue, and thus that the thirty-five-year-old plaintiff wife would be virtually a lifelong cripple — this also is a circumstance which convinces me that, on the question of liability, the verdicts were not rendered as a result of a due weighing of the evidence. By this I mean to question whether the evidence as to the seriousness of injury may not have caused the jury to give plaintiffs' proofs as to the presence of the hole and its causal connection, an undue weight.

It is my opinion that the verdicts are so against the weight of evidence that for that reason, and in the interests of justice, a new trial should be ordered.

Hill, P. J., Bliss and Heffernan, JJ., concur in decision; Brewster, J., dissents in an opinion; Foster, J., taking no part.

Judgment and order affirmed, with costs.